**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CR-80063-DMM**

**UNITED STATES OF AMERICA**

v.

**MICHAEL DOLCE,**

      **Defendant.**
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM IN OPPOSITION TO DEFENDANT'S VARIANCE REQUEST FROM THE SENTENCING GUIDELINES AND ALTERNATIVE MOTION FOR UPWARD VARIANCE**

Pursuant to Title 18, United States Code, Section 3553(a), the United States of America, by and through the undersigned Assistant United States Attorney, hereby files this sentencing memorandum, in opposition to the defendant's variance request from the sentencing guidelines (DE 30). He is requesting a 9-month sentence (*Id*. at 15) or at this point, time served. Contrary to his request, a sentence at the high end of the 78 – 97-month guideline range is wholly appropriate. Additionally, should the Court sustain the defendant's PSR objection (DE 26), the government herein moves for an upward variance and requests the Court sentence the defendant to 97 months' imprisonment. This sentence is not greater than necessary.

> *Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.*

*United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010).

**BACKGROUND**

The facts are outlined in the Presentence Investigation Report, "PSR" (DE 28). The defendant was arrested on March 29, 2023, after he was released from a Baker Act/mental health facility following the execution of a search warrant at his residence on Mach 15, 2023 in which he was found to possess child pornography[1], accessing the same since at least December 2020. He was arraigned on an Indictment charging one count of possession of child pornography or CSAM (DE 8) and pled guilty to that count on October 4, 2023. The defendant is scheduled to be sentenced this Monday, December 18, 2023.

Dolce's motion, psychosexual evaluation, and letters of support, portray a man who is without much fault in his life. He has been a supportive father, worked to provide for his family as a licensed Florida attorney, argued to change laws to favor victims of crime, and represented victims of sexual abuse in State and Federal Court. He is not without life's struggles, having been sexually abused, dealt with his brother's sexual abuse, watched his mother die young, watched his father go to prison, and had his adopted son commit suicide, among other traumas. But despite seeking mental-health treatment while simultaneously working to "protect victims", there lies a man, who in the dark corners of his home, for at least twenty-seven (27) months, used the Internet to seek out CSAM. He did this in his West Palm Beach apartment, in the late hours of the night, where he lived alone; the same home he would have his minor-aged son visit.

The material was obviously illegal. He horded nearly 2,000 images and several videos of prepubescent girls, forcibly being posed to create sexually charged images. Some were in dress up, others not. Some were alone, others in group shots. Some had their legs spread open, forced

---

[1] The undersigned will refer to the defendant's charges as "child pornography" as that is the term utilized by the statute he was convicted under, 18 USC § 2252A. However, a more appropriate term that does not demean the victims and describes the material more accurately is child sexual abuse material (CSAM) or child sexual exploitation material (CSEM).

to reveal their entire pubic and anal region; others seductively instructed to touch the nude body of another young girl; some inserted objects vaginally, others with their faces rapped to portray asphyxiation. *See generally* PSR ¶ 24; DE 27:5.

One would be hard-pressed to find these deviant images by searching Google. Dolce's tool of choice, BitTorrent, is a unique peer-2-peer network on the Internet. To find his images of young pre-pubescent children (mostly girls) being forced in to scenes of nude exploitation of their genitalia for the pleasure of others, Dolce: first, had to learn about peer-2-peer networking; second, find a torrent indexing website; third, conduct a keyword search using a term such as "lolita" or "pthc" (pre-teen hardcore), for example to find the CSAM; fourth, select a "torrent" of interest to download; fifth, designate a folder in order for the BitTorrent program on his computer to download the file to that folder so he could watch it. Unfortunately for the victims, as soon as he downloaded any part of these images, Dolce's computer immediately began sharing the file with other users on the network.

On his open computer, lying on his bed in his West Palm Beach efficiency, Dolce had been actively accessing and viewing CSAM when the FBI executed its search warrant. He had an open internet browser for a website on which he had searched for "ls studio collection" (PSR ¶ 22). He was actively downloading CSAM using the BitTorrent client uTorrent directly to a folder he created, entitled "NewFolder(4)" (PSR ¶¶ 23,24). From this folder, other child pornographers downloaded the same CSAM directly from Dolce. *Id.* Whether he knew it or not, he was distributing child pornography. Then, in "NewFolder(5)" Dolce maintained the larger cache of CSAM within 9 neatly organized sub-folders (PSR ¶ 26). Four of those "contained predominately or exclusively CSAM … One sub-folder, titled 'sweetie,' included an additional sub-folder titled, 'Sweet-Pedo Stars,' which featured child erotica and child pornography images of a single

prepubescent minor female victim with the added watermark 'PEDO STARs' imbedded on the images." *Id*. "Pedo" is short for pedophilia.

In his motion for downward variance, Dolce believed his crime to be only, "watch[ing] child pornography on his home computer" (DE 30:1). This minimizes his crimes. Dolce downloaded CSAM, collected CSAM, allowed CSAM to be shared with other likeminded people, received pleasure from CSAM, and even *masturbated* to CSAM…for years, unchecked, all while being a father to young children and practicing as an attorney who represented very children who were sexually violated. The protagonist became the villain. Dolce did more than "watch" it; these sexual exploitation images of little girls became an obsession, all the while helping to build the market for other child pornographers and thus creating the need for more victims.

**I.   IMPOSING A DOWNWARD VARIANCE FROM THE 78 – 97 MONTH RANGE IS WHOLLY INAPPROPRIATE UNDER 18 U.S.C. § 3553(A).**

It is well settled that a district court must consult the Sentencing Guidelines Manual and consider the advisory sentencing guidelines range prior to rendering a sentence. *See United States v. Crawford*, 407 F.3d 1174, 1178–79 (11th Cir. 2005). After properly calculating the sentencing guidelines range, a district court must next consider and balance the sentencing factors in 18 U.S.C. § 3553(a) to determine a "reasonable" sentence, which may be more or less severe than that provided for by the guidelines range. *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). The court need not discuss each of the 3553(a) factors in rendering a sentence, *see United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005), so long as the record reflects consideration of the factors in general, *see Nelson v. United States*, 555 U.S. 350 (2009).[2] Finally, in rendering a

---

[2] The following are the factors outlined in Section 3553(a): (i) The nature and circumstances of the offense and the history and characteristics of the defendant; (ii) The need for the sentence imposed – (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) The kinds of sentences available; (iv) The kinds of sentence and the sentencing range established

sentence, a district court must adequately explain the chosen sentence, including any deviation from the advisory sentencing guidelines range. *See, e.g.*, *Rita v. United States*, 551 U.S. 338, 356-57 (2007); *see also Irizarry v. United States*, 553 U.S. 708, 714 (2008) (discussing the difference between a departure and a variance).

The defendant contends, contrary to Eleventh Circuit case law, the Court should effectively disregard the sentencing guidelines that apply in this possession of CSAM case. He essentially makes this request for five reasons: 1) he is a low risk to reoffend; 2) he suffers from trauma which has caused mental conditions and pursuant to U.S.S.G. § 5H1.3; 3) the sentencing guidelines are unduly harsh; 4) as a lawyer, he has significantly helped victims of sexual abuse; and 5) similarly situated defendants have received sentences below the guidelines.

Several of these arguments tend to blend together, but not one of these reasons, or cumulatively, give rise to an appropriate variance from the guidelines. Dolce's crimes took place simultaneously to his "helping child abuse survivors" (DE 30:8). For more than 27 months he had no remorse while he pleasured himself watching and exchanging CSAM with like-minded individuals using BitTorrent. In addition, there is a need for general and specific deterrence, as is the impact that the sentencing will have on the public and victims of CSAM is a weighty concern.

1. *Dolce's psychosexual examination findings are not a reason to vary.*

Dolce has provided a sealed psychosexual report by Dr. Michael Brannon, who posited the defendant was a low risk to re-offend.[3] The government is very familiar with Dr. Brannon as an expert licensed psychologist, but his findings are not a reason to vary. It is largely from this report that Dolce request only 9 months incarceration – time served.

---

for the instant offense by the Guidelines; and (v) Any pertinent policy statements issues by the United States Sentencing Commission. *See* 18 U.S.C. § 3553(a).

[3] Attached as a sealed Exhibit to Defendant's Motion for Variance at Docket Entry 30, hereinafter "Brannon Report."

Dr. Brannon's report reveals that despite Dolce's trauma as a child and adult, he accelerated in academics, sports and had numerous friends (Brannon Report at 2). There was no reported history of domestic violence in his marriages. *Id.* Dolce repeatedly engaged in hospitalized and personal therapy in addressing his trauma. *Id.* at 3. He was public with his trauma, writing a book about his son's suicide, speaking to audiences about his survival from sexual abuse, working to change laws that would help victims of sexual abuse, and representing those victims. He took steps most therapists would only dream their client's pursued, yet still he enjoyed watching the sexual exploitation of little girls.

The U.S.S.G. advises this Court to consider mental and emotional conditions such as these for departure purposes, "if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. §5H1.3. The import of this statement is that a Court should not vary downward based on the defendant's mental or emotional condition. See, e.g., *United States v. Maldonado-Montalvo*, 356 F.3d 65, 74 (1st Cir. 2003) (defendant's depression was not an "extraordinary condition" as grounds for a departure); *United States v. Doering*, 909 F.2d 392, 394 (9th Cir. 1990) (§5H1.3 makes a defendant's mental condition relevant only in an extraordinary case). Many similarly charged defendants make claims of sexual abuse and other trauma in their lives. And despite the countless therapy that Dolce personally underwent, he has purposely hidden his crimes. This is not a mental or emotional condition. This is a crime. Thus Dolce's "remarkable" mental health is not a reason to depart. Likewise, this Court should not vary as there is nothing he has provided this Court that is to an unusual degree or distinguishes this case from the typical cases covered by the guidelines. *See* U.S.S.G § 5H1.3.

Dr. Brannon's ultimate conclusion is that Dolce "poses a low risk of sexual reoffending in the foreseeable future" (Brannon Report at 8). In formulating this opinion, Dr. Brannon appears to have relied heavily on the Child Pornography Offender Risk Tool (C-PORT), a tool that many psychologists have begun to use to try to identify the risk of re-offending by "child pornography offenders." Dr. Brannon found that Dolce scored only 1 of 7 possible points. The one point was awarded because Dr. Brannon diagnosed Dolce with pedophilic disorder (*Id.* at 7,6). The point system is quite mis-directive. In fact, only a very small percentage of those scored have ever received 5, 6 or 7 points (netting them the title of "high risk" to reoffend). And because most child pornography offenders have no prior history and remain in custody pending sentencing, most score a 0 – 2 depending on their age and the person grading the tool.

The C-PORT, like many other "predictive tools," is limited to the prediction of only whether someone will be caught, not whether they will sexually reoffend. The C-PORT focuses on a limited number of factors[4]. Indeed, the creator of the C-PORT has noted,

> [I]t is not recommended that the CPORT is used to reference recidivism probability until there are further validation studies. As a result, this tool is being used in conjunction with other empirically validated risk tools to consider the ranking according to risk score and aid in case management, supervision, and prioritizing treatment goals.[5]

Thus, the C-PORT was designed not for use at sentencing, but for supervision authorities (i.e., probation officers) who could use this among other methodologies to allocate their limited resources to managing those on release following a prison term. Unfortunately, this tool has

---

[4] Those factors are: 1) age of less than 35; 2) criminal history; 3) failure on conditional release; 4) any contact sexual offending; 5) pedophilic or hebephiliac interests; 6) more boy than girl CSAM; and 7) more boy than girl nude content.

[5] Eke, Helmus, Seto, FAQ Version 2: The Child Pornography Offender Risk Tool (CPORT) and Correlates of Admission to Sexual Interest in Children (CASIC) Scale (2018) at 12, https://www.researchgate.net/profile/Angela-Eke-2/project/Child-Pornography-Offender-Risk-Tool-CPORT/attachment/5b2b920ab53d2f89289708ff/AS:639927821807624@1529582090737/download/CPORTGuide+V2+Eke+Helmus+Seto+20June2018.pdf?context=ProjectUpdatesLog

7

morphed into what appears to be a decision maker in determining low risk. To his credit, Dr. Brannon notes that his assessment is for Dolce in the "foreseeable future." The C-PORT authors explained that the tool was only used to predict "fixed five-year outcomes." And even if we were to consider outcomes of 6 or 7 or 8 or 9 or 10 years, the fact is that most child pornographers remain incarcerated for that long a period. Perhaps what the C-PORT actually finds is that when child pornographers are imprisoned, they don't reoffend; and those who are released find ways not to be caught.

Indeed, to the extent that Courts consider risk assessment at all, the single best predictor of whether the defendant will be caught committing a new crime is the age of the defendant. Thus, the longer Dolce is in prison, the older he will be when he gets out, and thus the lower his risk of getting caught committing a new crime. Dolce's crimes are not against a particular targeted person; they are against all children everywhere. Therefore, the best way to protect the community is the very obvious method of incarcerating him for an extended period of time until he is highly unlikely to get caught committing a new crime. The younger he is when he is released, the higher the risk. For Dolce, who committed his crimes in his early 50s, the variance he requests won't alter his desires or ability to recommit these offenses. Time served teaches him nothing and means he has little accountability to the victims.

As Dr. Brannon will have to concede, he cannot in any terms predict Dolce's future; he cannot say that incarceration is not the proper way to deter the defendant, especially when the Bureau of Prisons offers significant treatment for sex offenders at nine (9) of its institutions, some of which include a high intensity 18-month residential treatment program.[6] The Bureau of Prisons has even issued a 31-page statement outlining, specifically, the treatment offered to sex offenders.[7]

---

[6] https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp
[7] https://www.bop.gov/policy/progstat/5324_010.pdf

8

One other note of interest: Dolce, in his acceptance of responsibility statement noted, "I suffered sexual abuse myself as a young child, *and I was photographed during part of it…*" (emphasis added). Brannon made no mention of Dolce being photographed (akin to the victims in this case) and the undersigned is unable to find any previous statement wherein Dolce mentions being photographed by his own attackers as a child. Dr. Brannon, again to his credit, recommended that in order to make a more thorough report, subject the defendant to a polygraph on this or any other issue. To date, no such report has been provided to the Court or the government. At least one fact stands out evidencing the need for such an examination.

Of course, nothing says that the C-PORT has any validity to Dolce or any other particular defendant for that matter. As with any other criminal who commits any other crime, a Court must look to the type of criminal and type of crime to determine if they are more likely to recidivate. But in the end, without empirical data, the Court should issue a sentence, not for what Dolce may do in the future, but for what he has done in this case.

2. *The United States Sentencing Guidelines are appropriate.*

The defendant points to the U.S. Sentencing Commission's 2012 "Report to Congress: Federal Child Pornography Offenses" ("2012 Report"), for the proposition that the guidelines for child pornography cases are too severe.[8] Of course, for Dolce's sentencing recommendation of 9 months to be considered appropriate by Congress and the Commission, Dolce's total offense level could be no more than 10 – or a 90% variance from the current range. It is hard to find felony offense scored that low and certainly not one involving young child victims being sexual exploited. The defendant's recommendation is unconscionable and wholly identifies to the victims what Dolce believes their victimization is worth.

---

[8] https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses

While the Commission has asserted its position that non-production guidelines warrant revision, it did so while suggesting the current guidelines produce overly severe ranges for some and overly lenient ranges for others. *See* 2012 Report xxi. Furthermore, Congress has clearly determined not to act on the Commission's Report, and the Commission itself has opted not to amend the guidelines despite recognizing its ability to do so.

Importantly, the Eleventh Circuit has affirmed, after the issuance of the 2012 Report, that it "has declined to conclude that the Guidelines governing child pornography are inherently flawed or disproportionately harsh." *United States v. Martinez*, 514 F. App'x 833, 835 n.2 (11th Cir. 2013). There is no abuse of discretion to consider possession of CSAM to be a "serious" one warranting a "significant sentence." *Id.* (quoting *United States v. Wayerski*, 624 F.3d 1342, 1355 (11th Cir. 2010); citing *United States v. Pugh*, 515 F.3d 1179, 1201 n.15 (11th Cir. 2008)).

In *United States v. Cubero*, 754 F.3d 888 (11th Cir. 2014), the defendant pled guilty to possession and distribution of child pornography. *Id.* at 890-91. His guideline range was 151-188 months. *Id.* at 891. He argued for a variance to 60 months based on his acceptance of responsibility, two dozen character letters, and two mental health professionals who opined regarding his low likelihood of recidivism…somewhat similar to Dolce's request and presentation. The court sentenced him to 151 months.[9] *Id.* at 892.

On appeal, Cubero argued that his guideline sentence was rendered unreasonable by the publication of 2012 Report. *Id.* at 899. The Eleventh Circuit disagreed, stating that 2012 Report

---

[9] The district court based its decision on the following facts:  1) he possessed a large collection of images and videos; 2) the type and content of the images; 3) the titles of the images were horrific; 4) images depicted the rape of toddlers; 5) 200 images and 17 videos were saved to CD; 6) he had collected child pornography for at least six months; 7) children were victimized by trading in child pornography; 8) differences existed between the defendant's case and the cases he cited to; 9) sentences from other courts may have been too low; 10) sentencing in child pornography is difficult because the uniqueness of offenders and attendant crimes; 11) the particular characteristics of this defendant; 12) the court had discretion to vary and had varied before; 13) a reasonable sentence would be at the high end of the guidelines; 14) nothing in this case convinced the court it should vary; 15) it would not vary below the guidelines; and 16) the sentence may be severe but was consistent "within the spirit of what Congress wants." *Id.* at 897.

10

did not change the duties of the district court or its discretion in any way. *Id*. at 900. The Court emphasized that the sentencing court had the experience to sentence appropriately no matter if a study or several studies say otherwise. *Id.* Finally, the Court held that 2012 Report:

> 1) Does not alter the district court's duties to calculate the advisory guidelines range and to impose a sentence after considering the § 3553 factors; 2) does not limit the district court's discretion to determine what weight to give to each § 3553 factor, and 3) does not require the district court to vary from the § 2G2.2-based guideline range.

*Id.* A Court can vary based on arguments mentioned in the 2012 Report, but it need not do so. *Id.*

Dolce also argues that most child pornography defendants receive the same special offense characteristic enhancements that he did in this case for use of computer, number of images, and the like (DE 30:4). The United States Sentencing Commission has had 15 years since publishing the 2012 Report to amend the guidelines and has chosen not to.[10] Perhaps, the cure is not to eliminate these special offense characteristics, but in fact to increase the base offense level so that all child pornographers begin with a base offense level of 30 or 32. In fact, with the guidelines as they are, the United States Sentencing Commission allows differently situated defendants to be scored differently.

Dolce also refers to United States Sentencing Commission, *Report to Congress: Federal Sentencing of Child Pornography Non-Production Offenses*, (2021) ("2021 Report")[11] for similar arguments to the 2012 Report. However, what the 2021 report found, which speaks more to the dangerousness of individuals like Dolce, is that "[n]early half (48%) of non-production child pornography offenders engaged in aggravating sexual conduct prior to, or concurrently with, the instant nonproduction child pornography offense in fiscal year 2019."[12] Of course, Dolce claims

---

[10] On December 14, 2023, the Commission released proposed amendments, again not altering the 2G2.2 guidelines.

[11] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf

[12] https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses

to be in the other 52% percent. The commission found this to be 12.9% increase from 2010. Although Dolce is not accused of hands-on conduct, he cannot make arguments for a downward variance based upon some of the commission's findings, while ignoring arguments for his dangerousness in other findings.

Section 2G2.2 is the product of thoughtful Commission institutional expertise and Congressional consideration and oversight. According to a Commission report, *The History of the Child Pornography Guidelines*, "[t]he Commission has sought to implement congressional intent in the area of child pornography offenses in a manner consistent with the [Sentencing Reform Act] and subsequent legislation. . . in amending the child pornography guidelines over the years, the Commission has reviewed sentencing data, considered public comment on proposed amendments, conducted public hearings on proposed amendments, studied relevant literature, and considered pertinent legislative history." See *The History of the Child Pornography Guidelines*. Although the obvious tenor of Dolce's filing is that the 2012 and 2021 Reports endorse a lowering of guideline ranges for child pornography defendants in general and Dolce in particular, this assessment is significantly flawed. The 2012 and 2021 Reports reached no definitive conclusions regarding lowering the guideline range for child pornography defendants.

There has been consistent and longstanding pattern by Congress of gradually increasing the penalties for child pornography offenses, even in the face of skepticism regarding those sentences. As the Sentencing Commission itself noted in a previous report:

> [f]or more than 30 years, and particularly in recent years, Congress has focused attention on the scope of child pornography offenses and the severity of penalties for child pornography offenders. Through creating new offenses, enacting new mandatory minimums, increasing statutory maximums, and providing directives to the Commission, Congress has repeatedly expressed its will regarding appropriate penalties for child pornography offenders. Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at

increasing the guideline penalties and reducing the incidence of downward departures for such offenses.

2011 Mandatory Minimum Report at 300 (quoting U.S. Sentencing Comm'n, The History of the Child Pornography Guidelines, at 6 (2009)). This statement was reiterated by the 2019 United States Sentencing Commission report entitled, Mandatory Minimum Penalties for Sex Offenses in the Federal Criminal Justice System.[13]

Even if the Court sets aside the 2G2.2 Guideline as the defendant would propose and proceeded solely within the twenty (20) year statutory range provided for first-time child pornography offenders, this defendant should receive a sentence of 97 months. This recommendation is just because of Dolce's years-long involvement using the BitTorrent network to access, possess, and share CSAM, while practicing as an attorney who represents and supposedly protects victims of sexual abuse, within the guise of the 18 U.S.C. 3553(a) factors.

3. *The resulting guideline range is not overly punitive.*

The defendant committed the crime of possession of CSAM for years and exchanged the same with like-minded individuals using the Internet. In addition, the children in the images and videos he possessed were of a young, prepubescent age. The victims, as Dolce well knows, did not make a choice to perform for the camera. Nevertheless, he received sexual gratification watching them. For this he asserts a 9-month sentence is appropriate.

Dolce cites more than a dozen cases where federal courts have granted a downward variance below the guidelines in CSAM possession cases. Not one of those cases are here in the Southern District. In fact, there are a plethora of Eleventh Circuit cases that have upheld guideline

---

[13] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190102_Sex-Offense-Mand-Min.pdf

sentences for child pornography cases even after the guidelines have been under attack.[14] For example, in *United States v. Kolligian*, 828 Fed. App'x. 655 (11th Cir. 2020) (unpublished), Judge Smith issued a low-end of the guideline range, 97-month sentence. The 11th Circuit affirmed the sentence and the district court's refusal to vary down. *Id.* at 658. The 11th Circuit noted that Judge Smith, who entertained similar arguments as Dolce makes here in regards to the guidelines, "chose the low end of the guideline range in part because of the testimony of Kolligian's expert, who opined that Kolligian was a low-risk offender." *Id.* Notably, Judge Smith did not go below the guidelines because of the expert's testimony (that being the same Dr. Michael Brannon) but stayed within the guidelines because of it.

The public and the victims of child pornography have a strong interest in punishing the defendant for this serious crime – a crime that causes actual injury to the innocent and young victims whose most traumatic moments the defendant and others like him transform into objects of pleasure and fantasy.

In fact, the 2021 Report by the United States Sentencing Commission examined 1,093 non-production child pornography offenders who had been released from prison or placed on probation in the year 2015 and tracked them for three (3) years. The commission found that 302 of the 1093 offenders (27.6%) were arrested for some new offense. *See* 2021 Report at 71; fn. 11 *supra*). Fifty

---

[14] *See, e.g., (United States v. Delgesso,* 769 Fed. App'x 861 (11th Cir. 2019) (unpublished) (78-month sentence not substantively unreasonable); *United States v. Wright*, 730 Fed. App'x 823 (11th Cir. 2018); *United States v. Brannen*, 662 Fed. App'x 670 (11th Cir. 2016) (78-month sentence affirmed for defendant who possessed 25 videos and 1,875 images depicting child pornography);*United States v. Rodriguez,* 2013 WL 135665 (11th Cir. Jan. 11, 2013) (unpubl*); United States v. Sorrell,* 2012 WL 6621522 (11th Cir. Dec. 20, 2012) (unpubl); *United States v. Boykin,* 2012 WL 5625853 (11th Cir. Nov. 15, 2012) (unpubl); *United States v. Gillette,* 485 F. App'x 416 (11th Cir. 2012); *United States v. Scott,* 476 F. App'x 845(11th Cir. 2012); *United States v. Rubinstein,* 2012 WL 1352945 (11th Cir. Apr. 19, 2012) (unpubl); *United States v. Huntt,* 461 F. App'x 892 (11th Cir. 2012); *United States v. Geenen,* 458 F.App'x 863 (11th Cir. 2012); *United States v. Norton,* 455 F. App'x 932 (11th Cir. 2012); *United States v. McGarrity,* 669 F.3d 1218 (11th Cir. 2012)*; United States v. Reaid*, 455 F. App'x 926 (11th Cir. 2012); *United States v. Nelson,* 442 F. App'x 496 (11th Cir. 2011); *United States v. Flowers,* 438 F. App'x 831(11th Cir. 2011); *United States v. McDaniel,* 631 F.3d 1204 (11th Cir. 2011); *United States v. Stearman,* 397 F. App'x 533 (M.D. Fla. 2010); *United States v. Wayerski,* 624 F.3d 1342 (11th Cir. 2010); *and United States v. Turner,* 626 F.3d 566 (11th Cir. 2010).

of these were arrested during the 3-year period for either a contact or non-contact sexual offense (4.6%), and 88 for failure to register as a sex offender (8.1%). *Id.* Unfortunately, these numbers fail to explain how many non-production offenders offended but *were not arrested.*

Dolce, in his own words, gave us insight into how he and others get away with their crimes. In a 2018 Newsweek article he wrote entitled, "We Have Set Up a System to Sex Traffic American Children,"[15] Dolce notes that "[s]ex predators are misusing the Internet daily to access their prey." That same year he penned an article for The Guardian: "Larry Nassar shouldn't be the only one going to jail."[16] Unintentionally, Dolce perhaps described his predilection for CSAM: "those who fail to act in the face of a child's cry for help is to be complicit in the crime and, most certainly, to be responsible for what happens to the next child the abuser targets." As an opinion contributor for The Hill in 2017, Dolce wrote, "Sex offenders are often skilled at manipulating others."[17] Dolce has been manipulating those around him for years as he led a double life: one moral, the other illegal. In the same article he explained the deviance of sex offenders like himself:

> I believe the majority of sex offenders are largely incapable of empathy. Two-thirds of male sex offenders will re-offend if they are not treated and *restrained* as criminals. The consensus among mental health and criminal justice professions is that these are people who look at the tears and agony on victims' faces, show no mercy and then quickly move on to the next victim.

Dolce foretold his own present and future.

Dolce offers that treatment will deter his future CSAM offenses. He has had treatment, he has had hospitalization, he has had medication. There is only one therapy left – punishment by an appropriate prison sentence for his heinous crimes. The interest of the victims, prepubescent children, in a sentence that reflects the seriousness of CSAM offenses cannot be overstated. These

---

[15] https://www.newsweek.com/we-have-set-system-sex-traffic-american-children-779541
[16] https://www.theguardian.com/commentisfree/2018/jan/26/larry-nassar-jail
[17] https://thehill.com/blogs/pundits-blog/crime/317111-say-no-to-restorative-justice-for-sex-offenders/

interests are not served by a downward variance below 97 months, and certainly not to 9 months, as recommended by Dolce.

In several of the letters Dolce has filed in support of his downward variance, his friends, colleagues, and family seem to be focused not on the victims or how Dolce took advantage of them, but of everything he had done in the past. One colleague (a lawyer and former prosecutor) noted, "[t]here is simply no interest identified in the federal Sentencing Guidelines, or for any moral society, in punishing this defendant further" (DE 30-3:4). A neighbor, who would presently have no issue having his 'young nephew' go to Dolce for help, has "yet to see evidence that any of that trust was misplaced" (DE 30-3:7). A third person explained "[w]hat an inspiration he has been to his profession. What a major, loving contribution he has made to victims of sexual abuse everywhere" (DE 30-3:15). Doubtful those little girls he downloaded and masturbated to would agree. Despite their attempt to support Dolce, his supporters only inadvertently enable Dolce to minimize his criminal actions.

It is impactful that Dolce did not produce one letter of support from a former client, not even ones whom he obtained large money judgments from; or any victim who now is able to take legal action without a bar from the statute of limitations because of Dolce's legislative actions. Doubtful any of them would put Dolce on the same pedestal as his friends and colleagues.

Who speaks for the voiceless? Who speaks for the hundreds of little girls whom Dolce obtained and trades like baseball cards? Who advocates for them when we cannot even identify all of them (the National Center has identified only 1 child in all of Dolce's collection). Only this Court, in issuing a strong sentence does that.

A primary purpose of child pornography legislation is to combat consumption of, as well as the market for, CSAM. By imposing severe penalties on individuals whose prurient demands

fuel the market for CSAM, courts can begin to reduce the market for CSAM, and, as a result, reduce the number of children who are victimized by the production of CSAM.

Moreover, although there is no evidence that the defendant ever engaged in sexual contact with a minor, the defendant unquestionably spent many hours seeking out and viewing images and videos that portrayed children engaging in sexual acts and with other children. There is a real need for specific deterrence in this case, where the defendant clearly spent time fantasizing about sexual acts with children.

To that end, "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976). This is especially true when, "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses…" *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable).

Therefore, there is no reasonable basis to vary from the guidelines; the defendant should be sentenced to 97 months' imprisonment followed by supervised release for life.

## II.    MOTION FOR UPWARD VARIANCE TO 97 MONTHS IMPRISONMENT

Should Dolce's objection to the PSR be sustained, his total USSG range would decrease to 51-63 months. This sentencing range would not reflect Dolce's crimes as he committed CSAM offenses for years, while representing victims of sexual abuse as a licensed Florida attorney. Had his clients known he downloaded, possessed, viewed and helped promulgate CSAM of prepubescent girls, they likely would have never hired him; and Dolce, as will likely be his future, would have been prohibited from practicing law. He lied to his victims and now asks this Court to sentence him to time served. But as when Justice Kagan recently opined on the validity of a local town's sign ordinance, Dolce's recommendation of 9 months' imprisonment does not even pass "the laugh test". *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 184 (concurrence) (2015). Nine months is not enough. 51-63 months is not enough. An upward variance to 97 months is appropriate and should be granted.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant to a term of imprisonment of not less than 97 months followed by supervised release for life.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    */s/ Gregory Schiller*
Gregory Schiller
Assistant United States Attorney
Court ID No. A5501906
500 S. Australian Ave., Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1045
Email: Gregory.schiller@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on December 15, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

                                         */s/ Gregory Schiller*
                                         Gregory Schiller
                                         Assistant United States Attorney